IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CRISWELL COLLEGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4409-N |
| | § | |
| KATHLEEN SEBELIUS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants' motion to dismiss Plaintiff The Criswell College's ("Criswell") complaint [Doc. 12]. Because Defendants are in the process of addressing the concerns that Criswell and others have expressed, the Court concludes that this case is not ripe for judicial consideration. The Court therefore grants Defendants' motion and dismisses Criswell's complaint without prejudice.[1]

### I. THE PARTIES' DISPUTE ABOUT
### THE AFFORDABLE CARE ACT

Criswell is a nonprofit Christian college in Dallas, Texas, that currently has around 320 students and fifty full-time employees. Criswell has sued the United States Departments of Health and Human Services ("HHS"), Labor ("DOL"), and the Treasury (collectively the "Departments"), as well as their secretaries – Kathleen Sebelius (HHS), Hilda Solis (DOL), and Timothy Geithner (Treasury) – in their official capacities. Criswell challenges the

---

[1]The Court also denies Criswell's motion to stay [20]. Because Criswell's claims are not ripe, the Court believes that dismissal, rather than a stay, is proper.

ORDER – PAGE 1

preventive services coverage provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010)[2] ("ACA"), as well as the regulations Defendants have issued to implement it.

### A. Statutory and Regulatory Changes Brought About by the ACA

*1. The ACA Incorporates HRSA Guidelines.* – Congress enacted the ACA in March 2010. The ACA's preventive services provision requires group health plans and health insurance issuers to provide coverage for certain preventive services. 42 U.S.C. § 300gg-13(a). These preventive services must include "preventive care and screenings" for women. *Id.* The phrase "preventive care and screenings" is defined in guidelines established by the Health Resources and Services Administration ("HRSA"), an agency within HHS. *Id.* A health plan or insurance issuer may not impose any cost-sharing requirements on the patient for these preventive services. *Id.* The ACA's preventive care requirements do not apply to "grandfathered" plans, which are plans that were in existence on March 23, 2010 and have not undergone certain types of changes since that date. *See* 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140.

*2. The IOM's Recommendations to HRSA Require Coverage of Contraceptives.* – On July 19, 2010, the Departments issued interim final rules implementing the ACA's preventive services coverage provision. 75 Fed. Reg. 41,726, *et seq.* (July 19, 2010). HHS charged the Institute of Medicine ("IOM"), a federally funded institute established by the

---

[2]Amended by the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010).

National Academy of Sciences, with developing recommendations regarding women's preventive care. The IOM published a report of its analysis and recommendations in July 2011. *See* INST. OF MED., CLINICAL PREVENTIVE SERVICES FOR WOMEN: CLOSING THE GAPS (2011), *available at* http://www.nap.edu/catalog.php?record_id=13181. The IOM report recommends that HRSA guidelines include, among other things, all contraceptive methods approved by the Food and Drug Administration ("FDA"). *Id.* at 10–12. As relevant here, the FDA has approved emergency contraceptives, such as "Plan B" and "Ella." *See* FDA, Birth Control Guide 16–17, available at http://www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf. Criswell characterizes these emergency contraceptives as abortifacient drugs: drugs that, it believes, cause abortions.

   *3.  HRSA Adopts IOM's Recommendations but Exempts Some Religious Employers.* – HRSA adopted IOM's recommendation that HRSA provide for coverage of emergency contraceptives in August 2011. HRSA, however, also exempted certain religious employers from the regulations. *See* HRSA Guidelines, *available at* http://www.hrsa.gov/womensguidelines; 76 Fed. Reg. 46,621 (Aug. 3, 2011); 45 C.F.R. § 147.130(a)(1)(iv)(A). To qualify as a religious employer and thus be exempt from the regulations, an organization must meet all of the following criteria:

> (1) The inculcation of religious values is the purpose of the organization.
> (2) The organization primarily employs persons who share the religious tenets of the organization.
> (3) The organization serves primarily persons who share the religious tenets of the organization.
> (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(I) or (iii) of the Internal Revenue Code of 1986, as amended.

45 C.F.R. § 147.130(a)(i)(iv)(B). The referenced sections of the Internal Revenue Code refer to "churches, their integrated auxiliaries, and conventions or associations of churches" and to " the exclusively religious activities of any religious order" that are exempt from taxation under 26 U.S.C. § 501(a). 26 U.S.C. § 6033(a)(1),(a)(3)(A)(i), (a)(3)(A)(iii). The Departments adopted this definition of "religious employer," after notice and comment, in February 2012. 77 Fed. Reg. 8725, 8727 (Feb. 15, 2012). Under Defendants' regulations, the new HRSA guidelines were to become effective on August 1, 2012. *See* 26 C.F.R. § 54.9815-2713T(b)(1); 29 C.F.R. § 2590.715-2713(b)(1); 45 C.F.R. § 147.130(b)(1).

At this point, then, the ACA and its implementing regulations were set to require most health plans and insurers to cover emergency contraceptives, without cost-sharing. The regulations provided for two exemptions: (1) grandfathered plans and (2) religious employers. Because Criswell did not have a grandfathered plan and was not a religious employer under the regulations' definition, the regulations would have required Criswell to provide insurance covering emergency contraceptives.

***4. The Temporary Safe Harbor.*** – When the Departments adopted their definition of "religious employer," however, they also created a temporary safe harbor from enforcement for non-grandfathered plans sponsored by certain nonprofit organizations with religious objections to contraceptive coverage. 77 Fed. Reg. 8725, 8727 (Feb. 15, 2012). In August 2012, the Departments clarified the safe harbor. It applies to organizations that meet certain specified criteria and will be in effect until the first plan year that begins on or after August 1, 2013. HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug. 15,

2012), *available at* http://cciio.cms.gov/resources/files/prev-services-guidance-08152012.pdf. Defendants expect that, by the time the temporary safe harbor expires, changes to the preventive services coverage regulations will have provided more religious organizations with further accommodations. Def.'s Br. Supp. Mot. Dismiss. 9.

***5. Defendants' Notices of Proposed Rulemaking.*** – Defendants began the process of amending the regulations to provide further accommodations by publishing an advance notice of proposed rulemaking ("ANPRM") in the Federal Register in March 2012. 77 Fed. Reg. 16,501 (Mar. 21, 2012). The ANPRM seeks to develop "alternative ways of providing contraceptive coverage without cost sharing in order to accommodate non-exempt, non-profit religious organizations with religious objections to such coverage." *Id.* at 16,503.

After receiving comments on the ANPRM, the Departments published a notice of proposed rulemaking ("NPRM") in the Federal Register in February 2013. 78 Fed. Reg. 8456 (Feb. 6, 2013). The NPRM proposes altering the definition of "religious employer" by eliminating the first three prongs of the current definition. *Id.* at 8461. In other words, a "religious employer" under the NPRM's proposed definition would be one "that is organized and operates as a nonprofit entity and referred to in section 6033(a)(3)(A)(i) or (iii) of the [Internal Revenue] Code." *Id.* The NPRM provides for comments on the proposal, including for the purpose of determining "whether additional or different language is needed to clarify the scope of the exemption." *Id.* Defendants "intend to finalize all such proposed amendments before the end of the temporary enforcement safe harbor." *Id.* at 8459.

### *B. Criswell's Lawsuit*

Criswell filed this suit on November 1, 2012, after Defendants' ANPRM but before its NPRM. Criswell's leaders "believe[] that, as a matter of religious conviction, it would be sinful and immoral for it to intentionally participate in, pay for, facilitate, or otherwise support abortion."[3] Compl. ¶ 2. According to Criswell, use of – and thus payment for – emergency contraceptives such as Plan B and Ella violates these beliefs. *Id.* ¶ 39. Accordingly, Criswell's current health plan excludes coverage for such drugs. *Id.* ¶ 46. Criswell's health plan is not grandfathered under the ACA. *Id.* ¶ 49. Moreover, Criswell does not meet the current definition of a "religious employer." *Id.* ¶¶ 69–71. If the current regulatory scheme remains in place, then, Criswell will be forced to provide coverage for emergency contraceptives or be subject to various fines and enforcement mechanisms. *Id.* ¶¶ 66–67. Because of the temporary safe harbor, however, Criswell will not need to comply with ACA coverage requirements – whether under the present regulations or any revised regulations – until at least January 1, 2014. *Id.* ¶ 106.

Criswell's complaint asserts that the Departments' regulatory scheme adversely affects Criswell in two primary ways. First, the uncertainty attending the preventive services mandate "impair[s] Criswell's ability to plan for the future." *Id.* ¶ 106. Second, and relatedly, the uncertainty prevents Criswell from implementing a proposed expansion plan. *Id.* ¶ 109. Criswell asserts in this suit that Defendants violate a number of federal laws and

---

[3]The Complaint states that "Criswell" holds this belief. As Criswell is an institution, the Court presumes that it is Criswell's leadership that holds it.

provisions of the United States Constitution: (1) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb; (2) the First Amendment's Free Exercise Clause; (3) the First Amendment's Establishment Clause; (4) the First Amendment's guarantee of freedom of association; (5) the First Amendment's Free Speech Clause; (6) the Fifth Amendment's Due Process Clause; and (7) the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Defendants now move to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that Criswell lacks standing to bring its claims and that those claims are not ripe.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS FOR LACK OF JURISDICTION

Under the Constitution, a federal court may decide only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) "The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (internal quotation marks omitted). "Standing and ripeness are required elements of subject matter jurisdiction and are therefore properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Roman Catholic Diocese of Dallas v. Sebelius*, No. 3:12-CV-1589-B, 2013 WL 687080, at *6 (N.D. Tex. Feb. 26, 2013) [hereinafter *Dallas Diocese*] (citing *Xerox Corp. v.*

*Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 350 (S.D. Tex. 2011)).

A court deciding a Rule 12(b)(1) motion may consider matters of fact which may be in dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Because Defendants' motion is based on the face of Criswell's complaint, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson*, 645 F.2d at 412. Criwsell, as the party asserting jurisdiction, bears the burden of proving that the Court has jurisdiction. *See Ramming*, 281 F.3d at 161.

### III. CRISWELL'S CLAIMS ARE NOT RIPE

The Court lacks jurisdiction over this suit because Criswell's claims are not ripe. Because it reaches this conclusion, the Court need not address Defendants' argument that Criwsell also lacks standing.

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993)). It "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08

(2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967)). "If the [plaintiff's] purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Hous.*, 617 F.3d 336, 342 (5th Cir. 2010) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)) (second alteration in original).

Courts consider two principal matters in determining whether an action is ripe: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* at 587 (citing *Thomas*, 473 U.S. at 581). Even where all questions are purely legal, however, a plaintiff must still show some hardship to establish ripeness. *Cent. & Sw. Servs. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). In reaching a decision on ripeness, a court may take into account events that have occurred since the plaintiff filed the case. *See Dallas Diocese*, 2013 WL 687080, at *14 (citing cases).

***1. The Issues in This Case Are Not Fit for Judicial Decision.*** – A challenge to administrative regulations is fit for review if (1) the questions presented are purely legal ones, (2) the challenged regulations constitute final agency action, and (3) further factual development would not significantly advance the court's ability to deal with the legal issues presented. *See Texas v. United States*, 497 F.3d 491, 498-99 (5th Cir. 2007) (citing *Nat'l Park Hospitality Ass'n*, 538 U.S. at 812; *Abbott Labs.*, 387 U.S. at 149–54).

As to the first element, it is true that the questions in this case are purely legal ones. As to the second, however, the regulations at issue are not final. While they have been published in the Federal Register, Defendants have repeatedly signaled their intent to revise them. The ANPRM, the temporary safe harbor, the NPRM, and Defendants' representations to this Court all lead to the conclusion that the regulations will not long endure in their current form. They are thus not truly final. *Accord Dallas Diocese*, 2013 WL 687080, at *15; *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998) (finding challenge to regulatory plan unripe where "the possibility that further consideration will actually occur before the [p]lan is implemented is not theoretical, but real"). The Court notes that, under the version of the "religious employer" test proposed in the NPRM, Criswell still may not qualify as a religious employer.[4] Even so, however, the NPRM expressly invites Criswell and others to weigh in on the question of "whether additional or different language is needed to clarify the scope of the exemption." 78 Fed. Reg. 8456 (Feb. 6, 2013). Whether Criswell will qualify as a religious employer after the revision of the regulation is, therefore, an open question. The NPRM specifically notes, moreover, that "the proposed rules would establish accommodations for health coverage . . . arranged by eligible organizations that are religious institutions of higher education, with religious objections to contraceptive

---

[4]As noted above, a "religious employer" under the NPRM's proposed definition would be one "that is organized and operates as a nonprofit entity and referred to in section 6033(a)(3)(A)(i) or (iii) of the [Internal Revenue] Code." 78 Fed. Reg. 8461. These sections of the Internal Revenue Code refer to "churches, their integrated auxiliaries, and conventions or associations of churches" and to " the exclusively religious activities of any religious order" that are exempt from taxation under 26 U.S.C. § 501(a).  26 U.S.C. § 6033(a)(1),(a)(3)(A)(i), (a)(3)(A)(iii).

coverage." *Id.* at 8459. Defendants are clearly aware of the objections of entities like Criswell, and they deserve time to address them.

Regarding the third fitness prong, further factual development would assist the Court in dealing with the legal issues this case presents. If the Departments alter their regulations, the Court may never need to confront some or all of the issues Criswell brings forward. Moreover, the Court's analysis would in any event be different under a different regulatory scheme. *See Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388–89 (D.C. Cir. 2012) (finding challenge to agency action unripe where agency's proposed rule change was "a complete reversal of course . . . that, if adopted, would necessitate substantively different legal analysis and would likely moot the analysis we could undertake if deciding the case now"). Because of the probable changes to the regulations, then, the issues in this case are not fit for judicial review at present.

***2. The Lack of Fitness Outweighs Any Hardship to Criswell.*** – Hardship "inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas*, 497 F.3d 491 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)) (alterations in original). A court must balance the fitness and hardship prongs. *Lopez*, 617 F.3d at 341 (citing *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 296 (5th Cir. 1998)). Criswell points to hardship in the form of its need to plan for the future, especially in light of its planned expansion, and to "administrative costs" it has incurred "in evaluating and

responding to the" ACA and its implementing regulations. Pl.'s Resp. Def.'s Mot. Dismiss 12–13.

First, the inability to plan does not constitute a sufficient hardship to overcome the case's lack of fitness for review. *Accord Dallas Diocese*, 2013 WL 687080, at *16 (dismissing on ripeness grounds even where ACA regulations undermined plaintiff's "desire for certainty and long-term planning"). As Defendants point out, if "planning hardship" were sufficient to require judicial review of a proposed agency decision, the hardship prong would effectively be meaningless, as many organizations plan for the future continually. *See, e.g.*, *Tenn. Gas Pipeline Co. v. FERC.*, 736 F.2d 747, 751 (D.C. Cir. 1984) (declining "to entertain anticipatory challenges pressed by parties facing no imminent threat of adverse agency action"); *Bethlehem Steel Corp. v. EPA*, 536 F.2d 156, 162 (7th Cir. 1976) ("[C]laims of uncertainty in [plaintiffs'] business and capital planning are not sufficient to warrant our review of an ongoing administrative process.").

For the same reason, "administrative costs" already incurred in "evaluating and responding to" regulations cannot justify review. Time spent considering the impact of a law or regulation on an organization is an insufficient hardship to make a challenge to the law ripe. Otherwise, any such challenge would necessarily be ripe once a plaintiff filed suit, as the plaintiff would have already spent time "evaluating and responding to" the law in preparing for litigation. The Fifth Circuit reached a similar conclusion in the standing context when it concluded that "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another

party is insufficient to impart standing upon the organization." *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). Furthermore, it is not clear how the costs that Criswell has already spent on this matter would be affected in one way or another by the Court's decision not to rule on the merits of this case.[5]

The Court does not disregard or minimize the hardships that the ACA and its implementing regulations have caused Criswell. Any further hardship that would result from the Court declining to rule on the merits of this case, however, does not outweigh the fact that the case is not fit for judicial review.

***3. The Court's Decision Is in Line with Those of Most Other Courts to Consider This Issue.*** – Criswell is not the only plaintiff to sue Defendants because of the ACA's provisions regarding contraception coverage. At least sixteen federal courts, including one in this District, have dismissed similar suits for lack of ripeness. *See Franciscan Univ. of Steubenville v. Sebelius*, 2:12-CV-440, 2013 WL 1189854 (S.D. Ohio Mar. 22, 2013) (dismissing for lack of ripeness and citing cases); *Dallas Diocese*, 2013 WL 687080, at *17. This represents by far the majority position. While these cases do not bind this Court, the Court finds their reasoning persuasive.

***4. The Court Declines to Hold the Case in Abeyance.*** – Finally, Criswell notes that the District of Columbia Circuit, after finding two similar cases unripe, elected to hold them

---

[5]If anything, it would seem that Criswell would incur *more* administrative costs in the near future if this litigation were to go forward – costs the Departments' new rules may forestall.

ORDER – PAGE 13

in abeyance rather than dismissing them. *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 553 (D.C. Cir. 2012). Criswell urges this Court to do the same. The Fifth Circuit, however, has repeatedly confirmed that "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n*, 143 F.3d at 1010. Criswell has pointed to no Fifth Circuit precedent suggesting that holding a case in abeyance is also a proper remedy. *See also Colorado Christian Univ. v. Sebelius*, No. 11-CV-03350-CMA-BNB, 2013 WL 93188, at *8 (D. Colo. Jan. 7, 2013) (declining to hold case in abeyance and noting that "if a necessary component of jurisdiction, such as ripeness, is found to be lacking, the court has no choice but to dismiss the action") (citing 15 JAMES MOORE *ET AL.*, MOORE'S FEDERAL PRACTICE § 108.81 (3d ed. 2011)). Nor is there any particular advantage to doing so: if Defendants do not resolve this issue to Criswell's satisfaction, Criswell may simply refile its case. The Court thus declines to hold the case in abeyance and dismisses it instead.

## CONCLUSION

The Court concludes that this case is not ripe for judicial consideration. Accordingly, the Court dismisses Criswell's complaint without prejudice.

Signed April 9, 2013.

David C. Godbey
United States District Judge